VIN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES J. CARTER and GLADYS M.    )
CARTER,                          )
                                 )
            Plaintiffs,          )
                                 )
       v.                        )     1:12CV495
                                 )
ROGERS, TOWNSEND, & THOMAS,      )
P.C., DAVID N., JOHN DOE, JOHN   )
P. FETNER, WALTER INVESTMENT     )
MANAGEMENT CORP., MARK J.        )
O'BRIEN, GREEN TREE SERVICING,   )
INC., and JOHN DOE,              )
                                 )
            Defendants.          )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on Plaintiffs' Application for Leave to Proceed <u>In</u> <u>Forma</u> <u>Pauperis</u> (Docket Entry 1), filed in conjunction with Plaintiffs' pro se Complaint (Docket Entry 2). Also before the Court are Plaintiffs' Motion for Emergency Hearing (Docket Entry 4) and Defendants' Motion for Extension of Time to Respond to Plaintiffs' Complaint (Docket Entry 5). The Court will grant Plaintiffs' request to proceed as a pauper for the limited purpose of recommending dismissal of this action, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim, and will deny the pending motions as moot.

BACKGROUND

Plaintiffs' Complaint puts forth the following material <u>factual</u> allegations:

(1) on or before April 12, 2012, Defendants[1] sent a "foreclosure petition and related documents to [Plaintiffs]" (Docket Entry 2 at 3)[2] and filed said "foreclosure petition and related documents in the Randolph County Superior Court" (id. at 5);

(2) the foreclosure petition identified Green Tree Servicing LLC ("Green Tree") as the owner of the property at issue when in fact Fannie Mae owned the property and Green Tree "is at most the Servicer for the alleged debt" (id. at 9);

(3) the foreclosure petition identified the property at issue as "148 Renola Dr. Archdale, NC 27263 f/k/a 134 Renola Dr. Archdale, NC 27263 with a legal description of Lots 133, 134, and 135 in the LH Kinney Subdivision" when in fact the "correct legal address of the property is 134a Renola Dr. Archdale, NC 27263 [and t]he correct legal description of the property is Lots 133, 134, 135, and 136 in the LH Kinney Subdivision" (id.);

---

[1] The Complaint identifies as Defendants Rogers, Townsend, & Thomas, P.C., three attorneys with said firm, Walter Investment Management Corp. and its "CEO," as well as Green Tree Servicing, LLC and its "CEO." (Docket Entry 2 at 2.) Much of the Complaint simply refers to "Defendants" as a group and repeats blocks of conclusory language about their purported misconduct. (See id. at 3-24.)

[2] All pin citations refer to the pagination in the footer appended to each document by the CM/ECF system.

(4) Defendants "schedule[d] and then cancel[ed] a hearing before the Clerk of Courts for the Randolph County Superior Court" (id. at 19); and

(5) Defendants "failed to provide [Plaintiffs] with written information proving the right of Green Tree [] to pursue collection of this debt" (id. at 21).

Based on the foregoing events, Plaintiffs apparently pursue claims for: (1) fraud/mail fraud (id. at 3-4, 9-12, 14-16, 19-23); (2) conspiracy under federal law (id. at 5-7); (3) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (id. at 7-9); (4) slander (id. at 12-14); and (5) attempted grand larceny (id. at 17-19). They demand (1) "judgment and relief in an amount in excess of $100,000,000 in compensatory and punitive damages for each claim in this Complaint and from each Defendant" (id. at 23); (2) "triple the damages awarded on each claim . . . for violations of the Federal RICO Act" (id. at 24); (3) that the Court "refer this matter to the U.S. Attorney and FBI for investigation of possible criminal violations" (id.); (4) that the Court "refer this matter to the North Carolina State Bar for investigation of whether the attorneys named as Defendants committed violations of their duties as licensed attorneys and Officers of the Court" (id.); (5) that "the Court order Defendants to retract all statements related to the alleged debt and remove any reference to an alleged debt to Green Tree [] from any and all

Credit Bureaus or other locations whereby they have previously reported it" (id.); and (6) that "the Court issue an immediate injunction ordering Defendants and all other parties to cease and desist any and all collection or foreclosure actions related to the property in question until such time as this case reaches its conclusion" (id.).

After filing their Complaint and Application for Leave to Proceed In Forma Pauperis, Plaintiffs moved for a hearing "on the grounds that Plaintiffs have been shut out of State Court . . . [and] are suffering irreparable harm every day that they are not allowed to defend themselves in State Court against false and defamatory accusations Defendants in the above entitled matter have filed against them in the Randolph County Superior Court." (Docket Entry 4 at 1.) Defendants subsequently filed their instant Motion for Extension of Time to Respond to Plaintiffs' Complaint, in which they stated that they had "received a copy of the Complaint by certified mail along with unsigned summonses," as well as a letter from Plaintiffs "indicating that [they] will be moving for a default judgment against [] Defendants if a response to the Complaint is not filed by July 18, 2012." (Docket Entry 5 at 2.) In light of that demand, although "Defendants do not believe that a civil action has been properly initiated in this Court or that they have been properly served, [they] seek an extension of time . . . to prepare and submit a response to the Complaint and Motion

for Emergency Hearing." (Id.)  Defendants thereafter responded to Plaintiffs' Application for Leave to Proceed In Forma Pauperis. (Docket Entry 6.)  Plaintiffs did not reply.  (See Docket Entries dated Aug. 8, 2012, to present.)

LEGAL BACKGROUND

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342 (1948)).  "Dispensing with filing fees, however, [is] not without its problems.  Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants.  In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit."  Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004).

To address this concern, the in forma pauperis statute provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action or appeal – . . . fails to state a claim on which relief may be granted . . . ."  28 U.S.C. § 1915(e)(2).  Under this standard, a

complaint falls short when it does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard thus "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>[3]

## DISCUSSION

Plaintiffs first allege that Defendants committed fraud and/or mail fraud against them by initiating and/or pursuing a foreclosure

---

[3] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read <u>Erickson</u> to undermine <u>Twombly</u>'s requirement that a pleading contain more than labels and conclusions," <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying <u>Twombly</u> in dismissing pro se complaint); accord <u>Atherton v. District of Columbia Office of Mayor</u>, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting <u>Erickson</u>, 551 U.S. at 94, and <u>Iqbal</u>, 556 U.S. at 679, respectively)).

proceeding based on false statements. (Docket Entry 2 at 3-4, 9-12, 14-16, 19-23.)  Under North Carolina law,[4] fraud requires the following elements: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party."  Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Plaintiffs' Complaint does not allege that any false representation by Defendants actually deceived Plaintiffs.  (See Docket Entry 2.) Rather, Plaintiffs apparently allege that Defendants directed the deception at the Randolph County Superior Court.  (See id. at 3 ("[T]he documents . . . contained false statements intended to induce the Randolph County Superior Court to fraudulently foreclose on real property owned by [Plaintiffs] and to defraud Fannie Mae out of a mortgage Fannie Mae is the legal owner of.").)[5]

Moreover, the Complaint nowhere asserts that the Randolph County Superior Court relied upon Defendants' allegedly false statements.  (See id. at 3-23.)  Further, although Plaintiffs

---

[4]  It would appear that North Carolina law would govern any non-federal tort claims asserted in this case, given that the alleged injurious act of filing the foreclosure petition occurred here.  See generally Bethel v. Federal Express Corp., No. 1:09CV613, 2010 WL 3242651, at *5 (M.D.N.C. Aug. 16, 2010) (unpublished) (discussing choice of law standards).

[5]  To the extent Plaintiffs seek to prosecute this action on behalf of Fannie Mae, they have failed to allege any facts suggesting they have standing to do so.  See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

7

request compensatory damages (see id. at 23), the Complaint fails to state how Defendants' purported fraud actually damaged Plaintiffs (see id. at 3-24). For example, the Complaint does not allege that Plaintiffs lost their house as a result of Defendants' foreclosure proceeding. (Id.) "In North Carolina, a fraud claim is fatally defective unless it alleges detrimental reliance, and damages proximately flowing from such reliance, with particularity." Food Lion, LLC v. Schuster Mktg. Corp., 382 F. Supp. 2d 793, 798 (E.D.N.C. 2005) (citing Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 421 (4th Cir. 1990)).

Additionally, the Fourth Circuit has recognized that the federal mail fraud statute, 18 U.S.C. § 1341, does not create a private right of action. See Laupot v. Berley, No. 88-2137, 865 F.2d 255 (table), 1988 WL 131819, at *1 (4th Cir. Dec. 8, 1988) (unpublished). In sum, Plaintiffs' state-law fraud and federal mail fraud claims fail as a matter of law.

The Complaint also purports to state a claim for "conspir[acy] in violation of federal law [related to the] fraudulent foreclosure petition and related documents . . . ." (Docket Entry 2 at 5.) In connection with that asserted claim, Plaintiffs identify no specific federal conspiracy statute on which they rely, but instead refer generally to "fraud, mail fraud, and grand larceny" (id.), as well as "the RICO Act" (id. at 6). To the extent Plaintiffs wish to pursue a RICO conspiracy claim, for reasons described more fully

8

below, they cannot. Nor do other frequently invoked federal civil conspiracy statutes have apparent application in this context. See generally Gray v. Laws, 915 F. Supp. 762, 763 (E.D.N.C. 1994) (discussing requirements of 42 U.S.C. §§ 1983 and 1985), aff'd in part and vacated in part on other grounds, 51 F.3d 426 (4th Cir. 1995). Finally, the Complaint offers nothing more than conclusory allegations as to any conspiracy, thus rendering this purported cause of action fatally defective in any event. See generally Iqbal, 556 U.S. at 678.

Plaintiffs next contend that Defendants "violate[d] the [RICO] Act by conspiring to file a fraudulent foreclosure petition and related documents in the Randolph County Superior Court in an attempt to steal real property worth at least $150,000." (Docket Entry 2 at 7.) "The Supreme Court has explained that a civil RICO claim has four essential elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." Whitney, Bradley & Brown, Inc. v. Kammermann, 436 F. App'x 257, 259 (4th Cir. 2011) (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)). "A plaintiff bringing a civil RICO action . . . must adequately plead at least two predicate acts of racketeering that form a 'pattern of racketeering.'" American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004) (quoting 18 U.S.C. § 1961(5)). The Complaint falls short as to a number of these requirements.

9

As an initial matter, Plaintiffs allege only one predicate act (i.e., filing a fraudulent foreclosure petition), thus failing to plead the requisite "pattern of racketeering." Moreover, "courts have refused to allow 'litigation activities' such as filing fraudulent documents or engaging in baseless litigation to serve as predicate acts for RICO . . . where such acts constitute 'the only allegedly fraudulent conduct.'" Feld Entm't Inc. v. American Soc. for the Prevention of Cruelty to Animals, 873 F. Supp. 2d 288, 318 (D.D.C. 2012) (quoting Daddona v. Gaudio, 156 F. Supp. 2d 153, 162 (D. Conn. 2000)); see also Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq., 758 F. Supp. 2d 153, 171 (E.D.N.Y. 2010) ("[P]ersuasive authority in this and other jurisdictions suggests that the litigation activities alleged in this Complaint [i.e., the mailing of pleadings, discovery notices, requests for adjournments, and other ministerial documents] cannot properly form the basis for RICO predicate acts."); Harris Custom Builders, Inc. v. Hoffmeyer, No. 90 C 0741, 1994 WL 329962, at *4 (N.D. Ill. July 7, 1994) (unpublished) ("The court finds that [the] alleged scheme of filing lawsuits to enforce an allegedly illegally obtained copyright does not constitute a predicate act of racketeering for purposes of RICO."). Similarly, "[a]ttempts to characterize abuse of process or malicious prosecution claims as mail and wire fraud violations for RICO purposes have been scrutinized by the courts, and have been rejected where the only allegedly fraudulent conduct relates

to the filing of documents in litigation." <u>Daddona</u>, 156 F. Supp. 2d at 162; <u>see also</u> <u>Nakahara v. Bal</u>, No. 97 Civ.2027(DLC), 1998 WL 35123, at *8 (S.D.N.Y. Jan. 30, 1998) (unpublished) (finding "the plaintiffs' allegations constitute at most an incipient claim for malicious prosecution, and that, as such, those allegations fail as a matter of law to establish the requisite predicate acts for purposes of their asserted RICO claim" where complaint alleged defendant "commenced and/or actively participated in various criminal and civil proceedings against the plaintiffs").

In addition, Plaintiffs' Complaint fails to identify an "enterprise" for purposes of RICO. A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association in fact "reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct' [and s]uch an enterprise . . . 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" <u>Boyle v. United States</u>, 556 U.S. 938, 944-45 (2009) (quoting <u>United States v. Turkette</u>, 452 U.S. 576, 580, 583 (1981)). Moreover, "the person committing the racketeering acts must be separate from the 'enterprise' that person participates in or conducts," <u>Foster v. Wintergreen Real Estate Co.</u>, No. 3:08cv00031, 2008 WL 4829674, at *4 (W.D. Va. Nov.

11

6, 2008) (unpublished), and the plaintiff must show "that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs," <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 185 (1993). In the instant case, even given the benefit of liberal construction, the Complaint "merely explains the roles of each Defendant without addressing the structure of the enterprise or how Defendants' activities benefitted the group as an independent entity," <u>Okaya (U.S.A.), Inc. v. Denne Indus., Inc.</u>, No. 00 C 1203, 2000 WL 1727785, at *4 (N.D. Ill. Nov. 21, 2000) (unpublished). (<u>See</u> Docket Entry 2 at 7-8.)

Finally, "[t]o recover civil RICO damages . . . an individual must also allege that he was injured 'by reason of' the pattern of racketeering activity," <u>American Chiropractic Ass'n</u>, 367 F.3d at 233, in a manner that damaged his "business or property," 18 U.S.C. § 1964(c). <u>See also</u> <u>Dickerson v. TLC The Laser Eye Ctr. Inst., Inc.</u>, 493 F. App'x 390, 394 (4th Cir. 2012) ("[The plaintiff] can only recover if he shows that his injury caused by the RICO violation damaged his business or property."). In this case, the Complaint does not allege that Plaintiffs in fact lost their home, or that it suffered any damage, as a result of any actions of Defendants. (<u>See</u> Docket Entry 2 at 3-24.) For all of the foregoing reasons, Plaintiffs' RICO claim fails as a matter of law.

The Complaint next alleges that, by filing a foreclosure petition falsely stating that Plaintiffs defaulted on a debt owned

12

by Green Tree, Defendants slandered Plaintiffs. (Id. at 12-13.)[6] According to the Complaint, the "debt in question is owned by Fannie Mae and if [Plaintiffs] defaulted on a debt to anyone, it would be Fannie Mae. However, Defendants did not allege [Plaintiffs] defaulted on a debt to Fannie Mae, nor has Fannie Mae made any such claim. Rather, Defendants falsely claimed [Plaintiffs] defaulted on a debt to Green Tree []." (Id.) To establish a claim for libel or slander under North Carolina law, "a plaintiff must prove: '(1) defendant spoke or published base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person.'" Cummings v. Lumbee Tribe of N.C., 590 F. Supp. 2d 769, 774 (E.D.N.C. 2008) (quoting Friel v. Angell Care Inc., 113 N.C. App. 505, 509, 440 S.E.2d 111, 113-14 (1994)).

In the instant case, the allegedly false statement concerns to whom Plaintiffs owed a defaulted debt, not the fact of default itself. (Docket Entry 2 at 12-13.) The Complaint lacks any allegation that Plaintiffs did not in fact default on the alleged

---

[6] Courts typically understand "slander" as a form of defamation arising from oral communication of an injurious false statement. See Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29-30, 568 S.E.2d 893, 898 (2002). In the instant case, Plaintiffs presumably mean "libel," the form of defamation that arises from publication of a writing, see id.

debt, but rather contends that Defendants incorrectly identified the owner of that debt. (Id.) However, the types of injury Plaintiffs claim - i.e., harm to credit scores and difficulty obtaining employment due to credit history - relate to the fact of default. (See id. at 13.) In other words, the alleged false statement here - that Plaintiffs owed a debt to Green Tree - does not bear a causal connection to the forms of prejudice they claim. On the other hand, to the extent reports of default may have prejudiced Plaintiffs, they do not deny the truth of their default. Plaintiffs thus have not stated a claim for defamation.

Lastly, the Complaint declares that "Defendants committed <u>attempted</u> grand larceny against [Plaintiffs] by <u>attempting</u> to steal real property worth at least $150,000." (Id. at 17 (emphasis added).) More specifically, the Complaint alleges that Defendants <u>attempted</u> to steal Plaintiffs' property via the allegedly fraudulent foreclosure petition. (Id.) Under North Carolina law, "[a]ny person . . . who commits an act that is punishable under [enumerated criminal statutes] is liable for civil damages to the owner of the property." N.C. Gen. Stat. § 1-538.2(a). The applicable statutes include larceny, but do not include any <u>attempt</u> crimes. See id. The instant Complaint does not identify, and the undersigned has not found, any North Carolina authority that permits a civil litigant to recover damages for <u>attempted</u> larceny. This claim therefore cannot proceed. See <u>Myers v. Sessoms &</u>

Rogers, P.A., 781 F. Supp. 2d 264, 269 (E.D.N.C. 2011) ("Federal courts applying state laws should not create or expand a state's common law or public policy.").

## CONCLUSION

Plaintiffs' Complaint fails to state a claim upon which relief can be granted.[7]

**IT IS THEREFORE ORDERED** that Plaintiffs' Application for Leave to Proceed In Forma Pauperis and Affidavit/Declaration in Support (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Emergency Hearing (Docket Entry 4) be denied as moot.

**IT IS FURTHER ORDERED** that Defendants' Motion for Extension of Time to Respond to Plaintiffs' Complaint (Docket Entry 5) be denied as moot.

---

[7] The Complaint identifies Plaintiffs as residents of Archdale, North Carolina, and Defendants Rogers, Townsend, & Thomas, P.C., David N., John Doe, and John P. Fetner as residents of Charlotte, North Carolina. (Docket Entry 2 at 2.) Such circumstances cannot satisfy the diversity jurisdiction statute. See 28 U.S.C. § 1332(a); Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005). Accordingly, upon finding the federal claims in the Complaint deficient, the Court simply could decline to exercise supplemental jurisdiction over the Complaint's state-law claims. See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). However, in light of the patent defects in Plaintiffs' state-law claims, the interests of justice and efficiency warrant adjudication of the entire Complaint. Moreover, the recommendation of dismissal moots Plaintiffs' request for a hearing and Defendants' request for more time to respond to the Complaint.

**IT IS RECOMMENDED** that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 28, 2014